## GUINAULT *vs.* LE CARPENTIER.

### APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW ORLEANS.

It is entirely a discretionary power, in the inferior court, to order a case to be sent before auditors, to facilitate the trial of causes, by the investigation of accounts.

Where the verdict of a jury appears manifestly erroneous, the case will be remanded for a new trial.

This is an action to recover a balance, which the plaintiff alleges is due him by the defendant, as a clerk and crier in his auction establishment, amounting to $8520,83. The plaintiff sets out the time of his employment as clerk and crier, from the 15th September, 1830, to the 15th November, 1836, and that his salary was understood to be gradually increasing from

about $700 per annum, until it was fixed in 1833 to $2500 per annum. After allowing credits, he prays judgment for the balance as stated.

The defendant pleaded the general issue, except as to certain allegations admitted. He set up a detailed account in the defence, which shows a balance against the plaintiff of $4396, for which he prays judgment over in reconvention.

The case involves minute and intricate accounts and the record contains a mass of testimony. There was a mistrial; and on submitting the cause to a jury the second time, they returned a verdict for the plaintiff in the sum of $2746,49, which after an unsuccessful attempt to obtain a new trial, was confirmed by the judgment of the court ; and the defendant appealed.

*C. Janin & Roselius*, for the plaintiff and appellee.

*Benjamin*, for the appellant.

*Garland, J.* delivered the opinion of the court.

The petitioner alleges he·was for about six years in the employment of the defendant, who is an auctioneer, as his crier and out-door clerk. He went into the service of defendant about the 15th of September, 1830, and continued until the 30th of June following, at the rate of fifty dollars per month, when he was paid up in full. He alleges that about the end of the month of July, 1831, he was appointed a clerk in the Bank of Louisiana, at a salary of $900 per annum, but upon the offer of the defendant to give him the same salary and a fair increase at the time business is generally resumed, that is on the 1st of November, following, he resigned the office and remained in defendant's employment. That about the 1st of May, 1832, the 1st of November in the same year, the 1st of July, 1833, and the 1st of December following, the defendant entrusted him with further care and business in his auction store, and said to him at each of those periods, his salary was augmented, but did not say how much. The petitioner says, that at first, from motives of delicacy, he forebore inquiring

how much he was to have, or asking any explanation, but after a long time had elapsed, he several times requested defendant to have a settlement with him, which he always deferred for want of leisure and the pressure of other business.   He further alleges that about the month of October, 1836, being persuaded that the defendant was not acting in good faith, he determined to quit his employment, gave him notice to that effect, and left him on the 15th of the following month ; soon after which time, the plaintiff in person, and through friends, again called on defendant for a settlement, which was postponed on various pretexts.  The plaintiff says he is entitled to $11,520,83, in consequence of the promises to him made and by reason of the further and more important business entrusted to him.   He admits the receipt of about $3000, and claims judgment for the remainder.

The plaintiff states his claim as follows :

Salary from 1st August, 1831, to 31st October, same
  year, at $900 per annum, 3 months,.................$225,00
From November 1st, 1831, to 30th April, 1832, at
  $1500 per annum, 6 months,......................... 750,00
From the 1st of May, 1832, to 31st October, 1832, at
  $1800 per annum, 6 months,......................... 900,00
From the 1st November, 1832, to the 30th June, 1833,
  8 months, at $2000 per annum,...................... 1133,33
From 1st July, 1833, to 30th November, 1833, 5
  months, at $2200 per annum,........................ 916,67
From the 1st December, 1833, to the 15th November,
  1836, at $2500 per annum,.......................... 7395,83
                                                    _____
                                                    $11,520,83

The defendant for answer, says, that about the 15th September, 1830, he employed the plaintiff, who then knew very little of business, at a salary of $40 per month.   That as he became better acquainted with business and more useful, he gradually increased the compensation, at the periods mentioned and the sums stated in an account he annexes, until the 1st of

July, 1833, when the salary was fixed at $1200, after which time it was never increased, as the plaintiff well knew, and he had received that sum, as will appear from entries made in defendant's books by the plaintiff. He further says, that the claim presented by plaintiff has been prepared and devised for the purpose of balancing certain sums received and collected by him as clerk, and not accounted for. He states the plaintiff was his out-door clerk, and was in the habit of making sales in different parts of the city, and collecting the money, also the bills for sales made at the store. He then presents an account, which leaves a balance due defendant of $4396, for which he claims a judgment in reconvention.

The cause was twice tried by a jury; the first could not agree, but the second found a verdict in favor of the plaintiff for $2746,59; upon which judgment was rendered, and the defendant appealed.

After the first trial, the defendant moved for a rule on the plaintiff, to show cause why auditors should not be appointed to examine and state the accounts and report thereon for the the information of the court and jury. Upon argument, the rule was discharged, and the defendant's counsel has called our attention to it, with a view as he states, of having our judgment upon the question, in the event of the cause being remanded.

The article 443 of the Code of Practice authorizes courts to appoint auditors to examine intricate accounts whenever they may deem them necessary. This confers a discretionary power, which we are not disposed to interfere with, unless in a case of abuse, which is not shown in the present instance. The law was intended to facilitate the trial of causes and the investigation of accounts, but if the judge chooses to do that himself or impose it on a jury, we do not think it a sufficient reason to interfere, although we might think the appointment of auditors or *experts*, would be a more convenient mode of arriving at the real facts. This question was argued at much length in the case of Caulker *vs.* Banks, 3 Martin N. S. 532, and we think

*It is entirely a discretionary power in the inferior court, to order a case to be sent before auditors, to facilitate the trial of causes, by the investigation of accounts.*

correctly decided.   The plaintiff could not perhaps have con-
sented to the appointment of auditors, as he had prayed for a
jury, without waiving it, but we are not prepared to say, he
could limit the authority of the court by asking a trial by jury.
1 Idem, 154.

A number of witnesses have been examined and the record
is encumbered with many statements having no bearing upon
the case.   There is no evidence showing any particular con-
tract between the parties after 1831.   Within the first year
several receipts were given, which show how much plaintiff
was to receive, and one dated August 8th, 1831, shows the
salary was then at the rate of $700 per annum, which is about
the time plaintiff says he was appointed a clerk in the Bank of
Louisiana.   The increase from six to seven hundred dollars
took place on the 1st of July, 1831, as is shown by the receipt
last mentioned.   The plaintiff alleges that as there is no ques-
tion about his having been in the employment of defendant,
and as the contract only extended to services and not to price,
he is entitled to recover what his services were worth, and
relies upon the testimony to sustain his claim, and the verdict
of the jury.

Both parties agree, that in July, 1831, the salary was $700
per annum, the plaintiff says, on the 1st of August it was in-
creased to $900, the defendant says it was not so increased
until November.   This increase, it is said, was in consequence
of the appointment plaintiff had received in bank, the date of
which is not fixed, nor is the fact of the appointment estab-
lished.   The only witness who speaks of it, says, he had
recommended plaintiff for the office, and had the promise of
the cashier he should be appointed, which he considered as an
appointment, but on the day of the election, plaintiff withdrew
his application, saying, defendant would give him as large a
salary as the bank offered, to wit, $900.   The records of the
bank will probably show when the appointment of runner was
made in that year, but as the evidence now stands, the date is
uncertain.   The witness does not name any month in the year

EASTERN DIS. when it was made, whereby the plaintiff leaves his case
July, 1841. doubtful.

GUINAULT        The evidence to show the value of the services is very un-
vs.
LE CARPENTIER. certain.   Valsin Blache, who was a fellow clerk, and principal
book-keeper, seems never to have known of this rapid increase
of salary.   He received nothing like it himself.   The successor
of plaintiff received but one thousand dollars per annum.   In
1833, when defendant and J. B. Blache settled their partner-
ship account, the wages of all the clerks were included and
Valsin Blache says plaintiff's salary was then one thousand
dollars per annum.   This settlement was made in presence of
plaintiff who made no objection, yet in the account on file, he
says, he was entitled at that time to a salary of $2200.   At
that time neither J. B. Blache or defendant seemed to have any
idea of paying any such salary.   It is not shown that the clerk
of any auctioneer in the city receives the compensation claimed
by plaintiff, or ever did J. B. Blache, who swears to the cor-
rectness of the account, states he was formerly a partner of
defendant and he received only $2400 per annum as his share
of the profits.   He further says he is an auctioneer and only
gives his crier and out-door clerk $1500 to perform the same
services plaintiff performed, and he expects him to be at his
command night and day, if necessary, whilst it is shown
plaintiff often left the store of defendant at four and a half or
five o'clock in the evening, and often came so late in the morn-
ing as to excite the complaints of his employer.

Fernandez & Whiting, who testify strongly in favor of
plaintiff, were not themselves willing to give him $2500 per
annum, after he left the defendant, although they think he
ought to pay that price.   They say they wished to employ
him, first offered $1500, then $1800, and finally made up their
minds to give $2000, but seem never to have offered it.   Whit-
ing says that when he offered plaintiff $1500 as a salary he
refused, saying he had as much at defendant's.

Various other witnesses were examined to prove the value of
the services, who swear they believe they were worth the sum

charged, some of them are auctioneers and have been clerks to auctioneers, but not one give an instance of any other auctioneer's clerk receiving such compensation.

The defendant has shown by several witnesses what he gives his other clerks, it is proved that on more than one occasion the plaintiff acknowledged his salary was $1200 per annum, and though the plaintiff's counsel has in his argument attacked the credibility of the witnesses who prove these admissions, it does not appear he attempted it in the court below but in one instance, and then with but little success. It is true a witness named Bernard Baudes swears he was present and heard none of the admissions and statements sworn to by Roy, Laurain and Deran, but he evidently felt a strong partiality for the interests of the plaintiff, and testified under its influence.

Several of the witnesses for plaintiff, who testify most strongly, are contradicted in direct terms by witnesses for the defendant. In the testimony of Domingon & Massy, that of Whiting & Levy, and of Valsin and J. B. Blache, there are palpable discrepancies and contradictions. Beaudue, who appears to appreciate plaintiff's services very highly whilst in the employment of defendant, only gave him forty dollars per month whilst in his own service, and gives as a reason that his business would not justify him in giving more. He does not say defendant's business would justify him in giving the amount claimed.

In the evidence of J. B. Blache, it is stated, that when he was about commencing business as an auctioneer, he offered to take the plaintiff into partnership with him, which he declined. The witness further states his business has been very profitable and if plaintiff had accepted the proposition, he would have made more than he now claims of defendant; it seems therefore to have been inferred, he ought to recover of defendant a compensation for what he has lost by declining the association. Upon this, we have to remark, there is no evidence that defendant did any thing to prevent plaintiff from entering into this partnership, nor is it shown such large profits were anticipated, if they had been, it may well be doubted whether Blache would have made the offer he did.

EASTERN DIS.
July, 1841.

A full examination of the testimony has satisfied us the plaintiff was an active and useful clerk, and his services ought to be compensated by a fair salary, but we are also satisfied that more than a just and liberal compensation has been allowed by the jury. An inspection of the plaintiff's letter to defendant informing him of his intention to quit his service, satisfies us that at that time neither party understood, the salary was at the rate of $2500 per annum, or that the services of plaintiff were worth that sum.

Believing the verdict to be clearly erroneous, we are compelled to remand the case for a new trial.

The judgment of the Parish Court is therefore annulled and reversed, and this cause remanded to be proceeded in according to law—the plaintiff and appellee paying the costs of this appeal.